JOVITA (ESTHER) LOPEZ, Plaintiff-Appellant, *v.* WINCHELL'S DONUT HOUSE, Defendant-Appellee.

First District (5th Division) No. 83—1656

Opinion filed July 20, 1984.

John Panici, of Chicago, for appellant.

Hubbard, Hubbard, O'Brien & Hall, of Chicago (Frederick W. Temple and John Skapars, of counsel), for appellee.

JUSTICE LORENZ delivered the opinion of the court:

Plaintiff appeals from an order of the circuit court granting defendant corporation's motion for summary judgment. Plaintiff contends that the trial court erred in entering summary judgment against her because a genuine issue of material fact existed concerning her charge that she was falsely detained and imprisoned. For the reasons which follow, we affirm the trial court's decision.

Count I of plaintiff's unverified two-count complaint alleged that plaintiff was employed as a clerk in defendant's donut shop in Woodridge, for approximately three years; that on or about April 8, 1981, defendant, through its agents and employees, Ralph Bell and James Cesario, accused her of selling donuts without registering sales and thereby pocketing defendant's monies; and that she was falsely detained and imprisoned against her will in a room located on defendant's premises, with force, and without probable and reasonable cause, by defendant's employees. Count I of her complaint also alleged that as a result of defendant's employees' wilful and wanton false imprisonment, she was exposed to public disgrace; greatly injured in her good name and reputation; suffered, and still suffers, great mental anguish, humiliation and shock; wrongfully terminated from her employment; required to seek medical attention; all of which prevented her from attending to her usual affairs.

Defendant filed its answer on August 19, 1981, denying the material allegations of count I of plaintiff's complaint. Further, on February 9, 1983, defendant amended its answer by filling an affirmative defense that alleged, *inter alia*, it was a merchant; that any questioning of plaintiff by its employees was performed only after said employees had reasonable grounds to believe that plaintiff had commit-

ted retail theft while working for defendant; that any alleged detention for questioning was limited solely to an inquiry as to whether plaintiff had failed to ring certain retail sales; and that such inquiry took place in a reasonable manner and for a reasonable length of time.

Defendant's motion for summary judgment on count I of the complaint set forth the argument that plaintiff's complaint, sounding in false imprisonment and alleging that she was held against her will by her employers in a certain room of a Winchell's Donut House, was contradicted by her testimony in a discovery deposition. Defendant argued that plaintiff testified in this deposition that she had voluntarily complied with Messrs. Bell and Cesario's request to speak privately with her regarding the matter of shortages in her register on April 9, 1981. Defendant further argued that plaintiff testified that when she no longer wished to continue her conversation with her employers, she got up and went home, electing never to return to her job.

The motion included portions of plaintiff's deposition which disclosed the following. James Cesario telephoned plaintiff at her home at 4:30 p.m. on April 9, 1981, and asked her to come down to the donut shop; he did not explain his reasons for wanting her to do so. As a result of this call, plaintiff walked to the store from her home, arriving 10 minutes later. Upon her arrival at the store, Cesario asked her to accompany him into the baking room, which was located at the rear of the store; Ralph Bell was also present in the room. After Cesario asked plaintiff to sit down, she indicated that they (Cesario and Bell) closed the door and locked it by putting a "little latch on." She stated that the two men told her that they had proof that spotters going from store to store had purchased two dozen donuts from her, but that her register had not shown the sale. After refusing her request to view the "proof," plaintiff stated that she was "too upset" to respond to their questioning regarding the length of time that her alleged "shorting" of the cash drawer had been going on.

She further stated that defendant's employees never told her that she had to answer their questions or face the loss of her job; never directly threatened to fire her; and made no threats of any kind to her during the interrogation. She further testified that she at no time during the interrogation feared for her safety; that she at no time refused to answer any question put to her; that there was never a point in the interrogation that she said, "I want to leave" and was prevented from doing so; and that she got up, left the room and went home when she first decided to do so.

Plaintiff's written response to defendant's motion for summary

judgment did not contradict the statements that she had made in her discovery deposition. In her affidavit filed in support of her response to defendant's motion for summary judgment, plaintiff averred that (1) she left the baking room after she began to shake, and when she felt that she was becoming ill; and (2) she was terminated from her employment by defendant.

The trial court entered summary judgment for defendant. Plaintiff appeals from that order. Count II of her complaint alleging defamation of character remains pending in the trial court.

OPINION

 It is well established that summary judgment determines whether any genuine issue of material fact exists and summarily disposes of cases where no such fact exists in order to avoid congestion of trial calendars and the expense of unnecessary trials. (*Loveland v. City of Lewistown* (1980), 84 Ill. App. 3d 190, 192, 405 N.E.2d 453.) The motion should be granted where the pleadings, exhibits, depositions and affidavits of record show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. (Ill. Rev. Stat. 1981, ch. 110, par. 2—1005(c).) In addition, discovery depositions may be used in the context of summary judgment proceedings "for any purpose for which an affidavit may be used." See 87 Ill. 2d R. 212(a)(4); see also *Sierens v. Clausen* (1975), 60 Ill. 2d 585, 588, 328 N.E.2d 559.

█ In ruling on a motion for summary judgment, the trial court must construe pleadings, depositions and affidavits included therein most strictly against the movant and most liberally in favor of the nonmovant. (*Blaylock v. Toledo, Peoria & Western R.R. Co.* (1976), 43 Ill. App. 3d 35, 37, 356 N.E.2d 639.) The defendant may at any time move for summary judgment in his favor for all or any part of relief sought against him. (*Kusiciel v. LaSalle National Bank* (1982), 106 Ill. App. 3d 333, 338.) However, because summary judgment is a drastic method of disposing of litigation, it should be granted only when the right of the movant is clear and free from doubt. *Hillblom v. Ivancsits* (1979), 76 Ill. App. 3d 306, 310, 395 N.E.2d 119.

Plaintiff asserts that the trial court erred in granting defendant's motion for summary judgment as there exists a genuine issue of material fact. She posits that she felt compelled to remain in the baking room so that she could protect her reputation by protesting her innocence to the two men, and that she left the room once she began to shake and feel ill. Additionally, she attributes her "serious emotional upset" to her feelings of intimidation that she contends were caused

by: James Cesario's sitting directly next to her during questioning, yellow pad and pencil in hand; Ralph Bell's repeated statement that his briefcase contained proof of her guilt; and his raised voice.

■■ ■ The common law tort of false imprisonment is defined as an unlawful restraint of an individual's personal liberty or freedom of locomotion. (*Johnson v. Jackson* (1963), 43 Ill. App. 2d 251, 258, 193 N.E.2d 485; *Shelton v. Barry* (1946), 328 Ill. App. 497, 506, 66 N.E.2d 697.) Imprisonment has been defined as "any unlawful exercise or show of force by which a person is compelled to remain where he does not wish to remain or to go where he does not wish to go." (*McKendree v. Christy* (1961), 29 Ill. App. 2d 195, 199, 172 N.E. 2d 380.) In order for a false imprisonment to be present, there must be actual or legal intent to restrain. *Campbell v. Kaczmarek* (1976), 39 Ill. App. 3d 465, 469, 350 N.E.2d 97.

Unlawful restraint may be effected by words alone, by acts alone or both (*Hassenauer v. F. W. Woolworth Co.* (1942), 314 Ill. App. 569, 41 N.E.2d 979 (abstract of opinion)); actual force is unnecessary to an action in false imprisonment. (*Winans v. Congress Hotel Co.* (1922), 227 Ill. App. 276, 282.) The Restatement of Torts specifies ways in which an actor may bring about the confinement required as an element of false imprisonment, including (1) actual or apparent physical barriers; (2) overpowering physical force, or by submission to physical force; (3) threats of physical force; (4) other duress; and (5) asserted legal authority. Restatement (Second) of Torts secs. 38 through 41 (1965).

It is essential, however, that the confinement be against the plaintiff's will, and if a person voluntarily consents to the confinement there can be no false imprisonment. (*Fort v. Smith* (1980), 85 Ill. App. 3d 479, 481, 407 N.E.2d 117.) "Moral pressure, as where the plaintiff remains with the defendant to clear himself of suspicion of theft *** is not enough; nor, as in the case of assault, are threats for the future ***. Any remedy for such wrongs must lie with the more modern tort of the intentional infliction of mental distress." Prosser, Torts sec. 11, at 45 (4th ed. 1971).

Plaintiff principally relies on the court's decision in *Marcus v. Liebman* (1978), 59 Ill. App. 3d 337, 375 N.E.2d 486, for support of her position that summary judgment should not have been granted in the instant case. In *Marcus v. Liebman,* the court extensively examined the concept that threats of a future action are not enough to constitute confinement. (59 Ill. App. 3d 337, 341.) There, the defendant psychiatrist threatened to have plaintiff committed to the Elgin State Hospital, and the *Marcus* court found that this was a *present* threat,

constituting false imprisonment, as opposed to a threat of future action. The court in *Marcus* concluded that the lower court had incorrectly directed a verdict for the defendant, and reversed and remanded the case for trial on the question of imprisonment. The court noted that plaintiff was already voluntarily committed to the psychiatric wing of a private hospital when the defendant made the threat to commit her to a state mental hospital and reasoned, "[A]t the time the alleged threat was made plaintiff was already confined. It was certainly reasonable for the plaintiff to believe that before her release [from the private hospital] commitment procedures could have been concluded." 59 Ill. App. 3d 337, 341.

■■ Our analysis of the *Marcus* decision, as well as the other cases cited by plailntiff, does not support plaintiff's position. All of these cases are easily distinguishable from the present case, as in each, either physical restraint or present threats of such were present.

In the case at bar, we are confronted with plaintiff's testimony, given under oath, that she voluntarily accompanied James Cesario to the baking room; that she stayed in the room in order to protect her reputation; that she was never threatened with the loss of her job; that she was never in fear of her safety; and that at no time was she prevented from exiting the baking room. Her affidavit, in which she averred that she left the baking room after she began to shake and when she felt that she was becoming ill, does not place into issue material facts which she had previously removed from contention. (*Fountaine v. Hadlock* (1971), 132 Ill. App. 2d 343, 347, 270 N.E.2d 222.) In her discovery deposition, given under oath, she stated that she "got up and left" when Ralph Bell asked her how long the cash register "shorting" had been going on.

In the tort of false imprisonment, it is not enough for the plaintiff to have felt "compelled" to remain in the baking room in order to protect her reputation (see Prosser, Torts sec. 11 (4th ed. 1971)), for the evidence must establish a restraint against the plaintiff's will, as where she yields to force, to the threat of force or the assertion of authority. (See Restatement (Second) of Torts secs. 38 through 41 (1965).) In the present case, our search of the record reveals no evidence that plaintiff yielded to constraint of a threat, express or implied, or to physical force of any kind. Also, absent evidence that plaintiff accompanied Cesario against her will, we cannot say that she was imprisoned or unlawfully detained by defendant's employees. Finally, we find no merit to plaintiff's argument that defendant's affirmative defense constituted an admission of an unlawful restraint.

For the reasons stated above, we conclude that the trial court properly granted defendant's motion for summary judgment, as there exists no question of material fact in the present case.

Affirmed.

MEJDA, P.J., and SULLIVAN, J., concur.